SALISBURY *vs.* BLACK's Adm'r. *D. B. N.*　　　JUNE, (E. S.)

APPEAL from *Kent* county court. This was an action of debt, brought on the 24th of February 1816, on a writing obligatory, executed on the 25th of April 1797, by *John Black*, (since deceased,) and *James Salisbury*, (the defendant and now appellant,) to *James Black*, whose administrator *de bonis non* with the will annexed, the plaintiff below and now appellee is, reciting, that "whereas *George*

B bequeathed a legacy to J, and appointed E his executor, who paid the legacy to J, and took his bond on the 25th of April 1797, conditioned to refund the legacy, or a rateable part thereof, if a deficiency of assets should actually happen, after request should be made: and there being a deficiency of assets, and the estate overpaid by E, he brought an action on the above bond on the 24th of February 1816, against J, who defended himself under the act of limitations. Held, that as the cause of action first accrued in 1814, when the deficiency of assets was ascertained, the statute of limitations was no bar

It is unnecessary, in such an action, to prove a special request of J to refund

*Black,* deceased, did duly make and execute his last will and testament in writing, and therein and thereby, among other legacies, did give and bequeath unto the above bound *John Black* and *James Salisbury,* the sum of £1100, viz. £600 to *John Black,* and £500 to *James Salisbury;* and therein and thereby did name and appoint the above named *James Black* his executor, who hath duly proved the same, and taken upon himself the execution thereof; and whereas the said *James Black* hath, at the request of the said *John Black* and *James Salisbury,* actually paid to them the sum of £850, in part of the above legacy of £1100, the receipt of which they do hereby acknowledge, although there may be cause to apprehend a deficiency of assets for payment of debts and other legacies. The condition, therefore, of this obligation is such, that if such deficiency shall actually and *bona fide* happen, the said *John Black* and *James Salisbury,* their executors or administrators, shall, after request in that behalf to them made, refund and pay back unto the said *James Black,* his executors or administrators, their rateable part or share of such deficiency, then," &c.' A judgment was entered for the plaintiff, subject to the opinion of the court, on these facts: It is agreed, that *John Black* and *James Salisbury,* executed unto *James Black,* executor of *George Black,* the bond on which this suit is instituted, dated the 25th of April 1797. *George Black* died in March 1797, having first duly made his last will and testament, dated the 29th of December 1796, whereby, among other devises and bequests, he bequeathed to his son *John Black* £600, to be paid at the age of 21 years, and to his daughter *Anna Salisbury* £500, to be paid at the end of two years after the testator's death. Letters testamentary were granted to *James Black,* on the estate of *George Black,* on the 30th of January 1797, and *James Black* returned an inventory and list of debts, amounting together to £2191 6 10. He also returned to the register of wills of *Kent* county, certain testamentary accounts of disbursements, viz.

January 9th 1798, first account, amounting to £105  1   3
October 3d 1798, second do.       do.       59   3   2¼
April term 1800, third   do.       do.      802   0   2⅔
October term 1800, fourth do.      do.      639  15   3⅒

| | | | | | | |
|---|---|---|---|---|---|---|
| January 2d 1801, | fifth | do. | do. | 165 | 10 | 2 |
| January 25 1803, | sixth | do. | do. | 412 | 19 | 11 |

£2184 9 0

*James Black,* the executor, died on the 1st of November 1803, and no letters of administration *de bonis non* were taken out on the estate of *George Black.* *James Black* by his will appointed *Margaret Black* his executrix, who took out letters testamentary on his estate, and returned to the register of wills of *Kent* county certain accounts of disbursements made by *James Black,* deceased, on the estate of *George Black,* viz.

February term, 1804, sixth additional account, claiming an allowance for the amount overpaid by *James Black,* as per account passed on the 25th of January 1803,

£298 14 7½

Also for cash allowed *James Black* for sundry negroes appraised in the estate of *George Black,* and replevied by the executors of *James Black,* senior, 350 0 0

Also for cash paid, and commissions allowed, &c. amounting to 474 0 6¾

1122 15 2

April 2d 1814, seventh additional account charging money received by *James Black* in 1801, and crediting disbursements, leaving this sum to the credit of *George Black's* estate. £133 0 1

£989 15 1

*Margaret Black* died on the 1st of September 1815, and *Frederick Wilson,* the plaintiff, was duly appointed by the orphans court administrator *de bonis non,* with the will annexed, of *James Black,* on the 24th of February 1816. The county court gave judgment for the plaintiff, and the defendant appealed to this court.

The cause was argued before BUCHANAN, Ch. J. MARTIN, STEPHEN, and ARCHER, J. by

*Carmichael,* for the Appellant, and by
*Chambers* and *Harrison,* for the Appellee.

ARCHER, J. delivered the opinion of the court. It has been contended in this case, that the statute of limitations is a bar to a recovery in this action. This question depends upon the ascertainment of the time when the cause of action accrued. The appellants allege that it accrued at the period assigned by law for the passage of a final account in the orphans court. Such a determination would limit the terms of the contract; for the parties have fixed no limited period for the ascertainment of a deficiency of assets. There is no stipulation to that effect. But the express agreement is, that the money paid should be refunded whenever a *deficiency shall actually happen.* The authorities cited in favour of this position, referring to cases in which the party who derives a benefit from the contract stipulates to do some act, before the benefit of which he is in pursuit is recoverable, are inapplicable to this case, for the obligee had never agreed upon any definite period at which the deficiency should appear. The only evidence which the statement furnishes of this deficiency, are the accounts and proceedings of the orphans court. By an examination of these it will be found, that the goods of the testator were never fully administered until the year 1814, at which period a very considerable deficiency appears. But it has been urged, that from an examination of the dates of the several disbursements for which allowances were claimed, it appears there was a deficiency of assets at the time of the death of *James Black* in 1803. *It is manifest, from an inspection of the evidence, that at the very time the bond was executed there was an insufficiency of assets.* Yet the fact was not ascertained, nor could it be known, until the goods which had come to the executor's hands were administered. When the account of the executrix of *James Black* was exhibited in 1804, property to a considerable amount, which had been returned in the inventory, was then the subject of litigation in an action of replevin. Nor does it appear by the testimony in the cause, that this action had been terminated, until it was announced in the account of 1814. It is true that this account has not the usual indications of a final account. It is not stated to be such, and further time appears to have been demanded by the executrix for the purpose of closing the estate. Yet, to every purpose, as concerns this question, the estate may be considered as closed, and the ascertainment of the

deficiency as made; for all the property had been applied to the payment of debts, and was insufficient to discharge them. Nor could the representative of *James Black*, in any account, have lawfully claimed to intermeddle with any effects of *George Black*, if such had existed, or, as such representative, have charged herself with them. Indeed, the record furnishes us with no intimation that there were other assets than such as were administered upon. But if they had existed, they would have been alone subject to the control of an administrator *de bonis non*. As the action then first accrued, when the deficiency was ascertained in 1814, the statute of limitations is no bar to this action.

It has been contended, that a special request was necessary to be proved before the right of action existed. But no special request is necessary in *a case like this*, where the debt becomes due on a contingency which is to happen after the execution of the contract. JUDGMENT AFFIRMED.